954 So.2d 1231 (2007)
Estelle M. WHITTLESEY, n/k/a Estelle Mirande, Appellant,
v.
Horace M. WHITTLESEY, Jr., Appellee.
No. 2D05-5399.
District Court of Appeal of Florida, Second District.
April 20, 2007.
*1232 Ellen Ware and Jeanie E. Hanna of Ware Law Group, P.A., Tampa, for Appellant.
Lorena L. Kiely of Law Office of Lorena L. Kiely, Tampa, for Appellee.
STRINGER, Judge.
Estelle M. Whittlesey, the Former Wife, seeks review of the final judgment which dissolved her marriage to Horace M. Whittlesey, Jr., the Former Husband. The Former Wife raises several issues regarding the equitable distribution and alimony awards. We reverse for reconsideration of both awards based on our conclusion that the filing of the October 1991 Belgian divorce action did not trigger the cut-off date for identifying marital assets and liabilities.
The parties met in Mexico and married there in 1982. The Former Wife is French, and the Former Husband is an American born in Mexico to American parents. At the time of the marriage, the Former Husband worked as the general manager of American Standard Corporation in Mexico. The Former Wife quit her job as a translator for the Mexican government shortly before the 1981 birth of the parties' first child. The parties' second child was born in 1982, and their third child was born in 1984.
The Former Husband transferred to American Standard's Thailand office in 1985, and the family lived in Thailand until 1990. The Former Husband's generous salary and benefits allowed the family to live a lavish lifestyle which included a penthouse, chauffeurs, private schools for the children, maids, and frequent vacations. In 1990, the Former Husband was promoted and transferred to Ideal Standard Europe in Brussels, Belgium. There the higher cost of living resulted in a somewhat reduced, but still relatively affluent, lifestyle.
In October 1991, the Former Wife filed a divorce action in Belgium, but the divorce did not proceed after the Former Husband moved to China to work for American Standard's Asian division in July 1993. The Former Wife and the children moved to the south of France to live with the Former Wife's family shortly after the Former Husband moved to China. The Former Wife and children relocated to Spain in 1996, and the Former Wife remains there today. The Former Husband took early retirement in 2000 and moved to Florida. He filed for divorce in Hillsborough County, Florida, in November 2000.
One of the issues at trial was the cut-off date for identifying the parties' marital assets. The Former Wife argued that the cut-off date should be the date the Former Husband filed the petition for dissolution *1233 of marriage in Florida, which was November 2000. The Former Husband argued that the cut-off date should be the date the Former Wife filed the Belgian divorce action, which was October 1991. The trial court determined that October 1991 was the appropriate cut-off date to identify the parties' marital assets.
The final judgment of dissolution of marriage equitably divided the parties' marital assets using the October 1991 cut-off date to identify which assets were marital. As part of this process, the final judgment determined that the Former Husband's Thailand stock, which he sold in 2001 for nearly $800,000, was a nonmarital asset. The final judgment also awarded the Former Wife monthly permanent periodic alimony of $2500.
On appeal, the Former Wife raises two challenges to the equitable distribution award. First, the Former Wife argues that the trial court should not have used October 1991 as the date to identify the parties' marital assets. Second, the Former Wife argues that even using the October 1991 date, the trial court erred in classifying the Thailand stock as a nonmarital asset. The Former Wife also raises two challenges to the alimony award. First, the Former Wife argues that the alimony award is not supported by proper factual findings. Second, the Former Wife argues that the trial court failed to address her request for life insurance to secure the alimony award. We will address these arguments in turn.

Equitable Distribution
A. Cut-Off Date For Identifying Marital Assets
Section 61.075(6), Florida Statutes (2000), provides, in pertinent part:
The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.

(Emphasis added.) The trial court held that filing the Belgian divorce action triggered the cut-off date for identifying marital assets as "the date of the filing of a petition for dissolution of marriage" under this section. The court reasoned that the legislature's use of the phrase "a petition for dissolution of marriage" instead of "the petition for dissolution of marriage" indicated its intent to allow the filing of any petition for dissolution to trigger the cut-off date for identifying marital assets. The court explained that the legislature could have used the phrase "the petition for dissolution of marriage," which, according to the court, would refer to the specific petition filed for consideration by the trial court. The court also concluded that by choosing the earliest of the above three events to trigger the cut-off date, the legislature intended that the assets and liabilities acquired after the parties indicate an intent to live separately be considered nonmarital. The court found that the parties in this case had a "de facto divorce" from the time the Former Wife filed the divorce action in Belgium.
This case appears to present a question of first impression in Florida. The legal question before this court is whether the filing of the Belgian divorce action triggered the cut-off date for identifying marital assets and liabilities under section 61.075(6). We recognize that section 61.075(6) does not specifically require that the petition for dissolution of marriage be filed in a Florida jurisdiction in order to trigger the cut-off date. However, we cannot accept the trial court's conclusion that the legislature's use of the *1234 phrase "a petition for dissolution of marriage" instead of the phrase "the petition for dissolution of marriage" requires trial courts to identify marital assets as of the date of filing any petition for dissolution in any country in the world at any time in the past.
Furthermore, we do not agree with the trial court's conclusion that the legislature intended that the assets and liabilities acquired after the parties indicate an intent to live separately be considered nonmarital. If this were the case, the legislature would have chosen the date of separation as one of the trigger dates under section 61.075(6). Instead, the legislature chose three dates on which the parties took legal action to set the divorce process in motion.
This case is hopefully unique in that the original dissolution action remained unresolved for almost ten years in a foreign country before a petition for dissolution was finally filed in Florida. The record is devoid of evidence regarding the Belgian court's actions in the divorce proceedings or the status of the case when the Former Husband left Belgium in 1993. We note that the Former Husband could probably have precluded consideration of assets he acquired after October 1991 if he had just made himself available for the Belgian divorce proceedings.
Under the unusual circumstances in this case, we find that the filing of the Belgian divorce action did not trigger the date for identifying marital assets and liabilities under section 61.075(6). We therefore reverse and remand for the trial court to use November 2000 as the cut-off date for identifying marital assets and liabilities.
B. Thailand Stock
In 1988 or 1989, the Former Husband purchased a $50,000 interest in American Standard stock for $25,000 of his own money plus $25,000 loaned to him by American Standard. The Former Husband's interest was acquired as a result of Black & Decker's attempted hostile takeover of American Standard. American Standard incurred massive debt to fend off the attack but survived to become a private company. In order to encourage its executives to extraordinary levels of performance, American Standard offered an opportunity to buy shares by matching money through loans. In 1998, American Standard issued the stock certificates to the Former Husband after it went public. The Former Husband sold the stock certificates in 2001 for nearly $800,000.
The final judgment determined that the Thailand stock was a nonmarital asset based on its conclusion that the shares were acquired after the October 1991 cut-off date. The Former Wife argues that the Thailand stock was a marital asset because it was issued prior to the October 1991 cut-off date for identifying marital assets. Our determination that the trial court should have used November 2000 as the cut-off date for identifying marital assets renders the Former Wife's argument moot because the stock certificates were issued to the Former Husband in 1998. Therefore, the trial court should consider the Thailand stock as a marital asset for purposes of equitable distribution on remand.

Alimony
A. Factual Findings
This court's determination regarding the proper cut-off date for the identification of marital assets renders the Former Wife's argument regarding alimony moot to the extent that the court must reconsider the award in conjunction with the parties' assets as identified in the new equitable distribution award. In order to *1235 assist the court with this task on remand, we offer the following observations. We understand that determining the parties' standard of living is difficult because they have not lived together since 1991 and, for most of the marriage, they lived the lavish lifestyle of ex-patriots in impoverished countries. However, the court must still consider the Former Wife's actual need and the Former Husband's ability to pay in determining alimony. See Beck v. Beck, 852 So.2d 934, 937 (Fla. 2d DCA 2003); O'Connor v. O'Connor, 782 So.2d 502, 503-04 (Fla. 2d DCA 2001). The final judgment currently does not make sufficient findings on either factor.
B. Life Insurance
The final judgment does not address the Former Wife's request that the Former Husband obtain life insurance to secure alimony. On remand, the court should consider this issue as well. It appears that the Former Husband does currently have a life insurance policy for $537,000 and that the children are the current beneficiaries. However, we express no opinion on the merits of the issue.
Reversed and remanded.
ALTENBERND and SILBERMAN, JJ., Concur.